JOHN W. WILLIAMS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 16, 1902.*

1. BURGLARY—*when burglar's tools may be put in evidence on trial for burglary.*  Burglar's tools found upon the person of the accused when arrested may be put in evidence upon his trial for burglary, even though the carrying of burglar's tools constitutes a separate crime, where the property stolen at the time of the burglary is found in the possession of the accused, who claims that he acquired the same by purchase.

2. CRIMINAL LAW—*the Habitual Criminal law has not been repealed.* The Habitual Criminal act of 1883 has not been repealed.  (*Featherstone* v. *People*, 194 Ill. 325, followed.)

3. SAME—*when conviction under the Habitual Criminal act is proper.* A conviction under the Habitual Criminal act is justified, even though the accused testifies that he was pardoned, where he admits three convictions, two of them the same as charged in the indictment, and only claims to have been pardoned on the third.

4. SAME—*when instruction on possession of stolen property is not erroneous.*  An instruction is not erroneous which holds that the possession of stolen property, the proceeds of a burglary, larceny or robbery, soon after the commission of the offense, is *prima facie* evidence of the guilt of the person in whose possession it is found, and is sufficient to warrant a conviction unless such possession is satisfactorily explained, or unless there appears, from all the evidence, a reasonable doubt of the defendant's guilt.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

R. A. WADE, (F. M. BURWASH, of counsel,) for plaintiff in error.

H. J. HAMLIN, Attorney General, and CHARLES S. DE-NEEN, State's Attorney, (FRANK CROWE, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

During the night of June 14, 1901, a burglary of the express office of Peter E. Sorenson, in Chicago, was committed, and a trunk owned by Francis E. North, which was to be sent by express to Chattanooga, Tennessee, was broken open and clothing and a silk doily were stolen therefrom. On the night of July 15, 1901, plaintiff in error, while running south on Market street, in Chicago, was arrested by a police officer. When searched at the police station, a jimmy and punch and a pair of pliers and a case-knife were found in his possession. At his request two police officers were sent to his room for underwear, and they found in the room the clothing and doily stolen from the trunk at the time of the burglary of the express office. Plaintiff in error was then indicted and tried in the criminal court of Cook county for the burglary. The indictment charged him with receiving stolen property and also with the burglary of the express office, and alleged that he had been previously twice convicted of the crime of burglary and sentenced to the penitentiary. Upon the trial he was found guilty of burglary and sentenced to the penitentiary at Joliet.

It is first contended that the evidence did not warrant the verdict. The crime was committed on June 14, 1901, and a woman, at whose house defendant roomed, testified that he brought the stolen goods to his room in the mid-

dle of June, 1901. The defendant fixed the time that he brought them to his room a few days later, and testified that he bought the clothing from Charles Barker in the rear room of a saloon on June 20, 1901, for $26. It was admitted on the part of the People that Charles Barker and Barney Johnson, if present, would also testify to such purchase. There was evidence that he gave other and contradictory accounts of how he came into the possession of the clothing. Defendant worked in a rattan factory, and among the clothes was a dress suit, which, his counsel say, was unsuited to his station and which he had no use for. A policeman testified that defendant told him he had the dress suit made in Iowa and that a lady friend made the doily for him. The landlady testified that defendant said that a lady friend made the doily for him and that he brought the clothes from his former boarding place, where he had left them about the middle of the previous March. Counsel say he would not steal a dress suit because he had no use for it, but that would be a more forcible reason why he should not buy one or have one made. He might have thought it would have some value for trade, or sale, or some other purpose, if he was committing a larceny. The principal argument, however, under this head is, that it would be incredible that defendant should send police officers for underwear to the room where this stolen property was. He had been caught running away and with burglar's tools in his possession, and may have thought that his room would be searched in any event. Whether he thought that the property stolen from an express office, ready for shipment to another place, would never be claimed or identified, or whatever his reason for sending the officers to his room, that fact is not sufficient to raise a reasonable doubt of his guilt, in view of all the evidence. It is also urged that he proved a good character, which should be taken into account. Several witnesses from the factory testified that he had behaved as a good citizen during

their acquaintance with him, but he admitted that he had been in the penitentiary three times for burglary, and it can hardly be said that the evidence, as a whole, proved the fact that he had been a good citizen or bore a good character. We think the evidence justified the verdict.

It is next complained that the court made prejudicial remarks in the presence of the jury. Only one of the alleged remarks appears in the abstract, and no objection was made to it. It occurred when the burglar's tools were offered in evidence. Defendant's counsel objected to them, and the court, in ruling on the objection, said, "They are a circumstance in connection with defendant, therefore I think they have a right to be in." The defendant objected to the ruling and saved his exception. No question relating to the remark was preserved in the record. The objection to permitting the tools put in evidence was, that the carrying of them constituted a separate crime. The fact that it was a crime to carry burglar's tools did not render them inadmissible, if their possession also tended to prove the burglary charged in this case. Defendant claimed that he acquired the stolen property by purchase, and there was evidence that he had made other and contradictory statements on that subject. He was in possession of property stolen at the time of the burglary, and it was competent to show that he was possessed of burglar's tools for the commission of crimes of that character.

The next objection is, that the court permitted a police officer to testify that the defendant, at the time of the arrest when he was running away, said, "I was breaking in a saloon down there." Defendant moved to exclude the statement on the ground that it tended to prove another burglary different from the one charged in the indictment. The objection was overruled. No other burglary was proved or attempted to be proved. Defendant claimed that he had used the tools in the rattan business

in tearing down partitions at a shop where he had worked some time previously. The evidence tended to contradict him as to the use of the tools in connection with his work at the factory, and to show that they were for the purpose of committing crime.

The next point is, that the Habitual Criminal act has been repealed, and that it was error to prove the former convictions. It has recently been held that the act in question has not been repealed. *Featherstone* v. *People*, 194 Ill. 325.

The next objection is, that the court erred in admitting the record of a former conviction because the defendant had been pardoned. No objection to the record appears in the abstract. The only evidence of a pardon is the statement of the defendant on his cross-examination, when he testified that he was tried and convicted under the name of William Wright before Judge Anthony; that after his release from the penitentiary he adopted the name of William Douglas, under which he was tried before Judge Altgeld and sentenced to the penitentiary, and that he was afterward tried before Judge Jamieson, in 1888, and sentenced to the penitentiary for a term of twenty years, but was pardoned in 1894 or 1895 by Governor Altgeld. No motion was made, after this testimony as to the pardon, to strike out the record of the conviction in 1888. If defendant's evidence was proof of a pardon, it would have availed the defendant nothing to have the record in that case struck out, because the other conviction charged was proved and would bring him under the Habitual Criminal act. He admitted three convictions,—two of them the same charged in the indictment, —and only claimed that he was pardoned on the third conviction.

The third instruction given at the request of the People is objected to as encroaching on the function of the jury. It states the familiar rule that the possession of stolen property, the proceeds of a burglary, robbery or

larceny, soon after the commission of the offense, is *prima facie* evidence of the guilt of the person in whose possession it is found, and informs the jury that such possession is sufficient to warrant a conviction unless the possession is satisfactorily explained, or unless there appears from all the evidence a reasonable doubt of the guilt of the defendant. It is said that the instruction requires the defendant to satisfactorily explain the possession, which is a higher degree of proof than the law requires. The instruction, however, makes it sufficient for the defendant if it appears from all the evidence that there is a reasonable doubt of his guilt, and we do not regard the instruction as objectionable. The thirteenth instruction given at the request of the defendant told the jury that if they believed, from the evidence, that defendant bought the property from Charles Barker, as he claimed, that would be a satisfactory account of his possession and remove every presumption of guilt from such possession.

The sixth instruction is objected to as presenting to the jury only the question of guilt and not of innocence. The purport of the instruction is that the jury had nothing to do with the term of imprisonment or the consequences of the verdict, but were simply to determine the question whether or not the defendant was guilty. We see no objection to it, and it is not subject to the criticism offered.

The ninth instruction is also complained of, but it is the same instruction given in *Rider* v. *People*, 110 Ill. 11, relating to the proper tests for determining the credibility of the defendant. It was there approved by the court.

There is some other discussion concerning instructions, but they do not raise questions of sufficient importance to justify alluding to them. There was no error at the trial and no reasonable doubt of defendant's guilt.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*