## NYQUIST v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 8, 1924.)

No. 4023.

**1. Conspiracy ⊙═45—Evidence of interstate thefts of motor vehicles prior to Dyer Act admissible to prove conspiracy under act.**

In prosecution for conspiracy to violate National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f), evidence of overt acts occurring before October 29, 1919, when act took effect, *held* admissible under the rule that conspiracy may be established by proof of attendant facts and circumstances raising natural inference that defendants were engaged in unlawful conspiracy.

**2. Conspiracy ⊙═40—Persons joining conspiracy after formation guilty.**

Persons joining and participating in a conspiracy after its formation are equally guilty with originators.

**3. Conspiracy ⊙═23—Once established, conspiracy may properly be found to continue until abandonment or purpose accomplished.**

A conspiracy may be a continuous agreement, and, once established, may properly be found to continue until consummation of purpose or abandonment.

**4. Conspiracy ⊙═47—Evidence held to sustain conviction for conspiracy to violate Dyer Act.**

Evidence as to defendant's connection with fraudulent agreement entered into before National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f) took effect and of overt acts participated in by defendant after passage of such act, *held* to sustain conviction for conspiracy to violate the act.

In Error to the District Court of the United States, for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Sven Nyquist was convicted of conspiracy to violate the National Motor Vehicle Theft Act, and he brings error. Affirmed.

Frederick J. Ward, of Detroit, Mich., for plaintiff in error.

Frederic L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (Delos G. Smith, U. S. Atty., of Detroit, Mich., on the brief), for the United States.

Before DONAHUE, MACK, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error, with several others, was charged, under section 37 of the Penal Code (Comp. St. § 10201), with conspiring to violate the National Motor Vehicle Theft Act (Act Oct. 29, 1919, c. 89, U. S. Comp. Stat. Supp. 1923, §§ 10418b–10418f), known as the Dyer Act, by transporting in interstate and foreign commerce certain stolen motor vehicles, and by receiving, concealing, storing, and otherwise disposing of the same when a part of and constituting interstate and foreign commerce. The substantial conspiracy charged involved the transportation of stolen vehicles from Detroit, Mich., to defendants Burroughs and Shanley at Bridgeport, Conn., there engaged in dealing in motorcycles and secondhand automobiles, or to one White, at the Marie Antoinette Garage, in New York City, to be paid for by Burroughs or Shanley at a price below the real value, and to be by them sold to others, including plaintiff in error, who seems to have been in fact engaged at New York City in the motorcycle and automobile accessory business and dealing in secondhand automobiles, and to be by him disposed of in Brooklyn or shipped to Europe in export trade, the amount received from Burroughs and Shanley for the stolen cars to be divided among those participating in their theft, concealment, and transportation. Basden, who seems to have had active charge of the transportation, together with two of his Detroit associates, pleaded guilty to the indictment, as did Shanley. On joint trial, Burroughs, Nyquist, and three alleged Detroit conspirators were convicted. Nyquist alone asks review here.

Omitting for the present all reference to plaintiff in error, there was substantial and ample testimony of the formation in July, 1919, of a conspiracy of the general nature charged, of its active prosecution until at least the latter part of December, 1919, and of some operation thereunder for a time thereafter. The Dyer Act did not take effect until October 29, 1919, and complaint is made of the admission of testimony of acts occurring prior to that date and of refusal to strike out the same. The substantial argument is that there could be no conspiracy to violate a law not in existence, and that the last car transported in the fall of 1919 had reached New York, and had been sold to plaintiff in error, two days before the Dyer Act took effect. This latter contention will later be referred to.

[1-4] It is, of course, true that an indictment could not lie for a violation of the Dyer Act occurring before its passage. But that is not the case presented. The indictment charges a conspiracy formed, "to wit, on the 29th day of October, 1919"; the overt acts charged are all laid as of dates subsequent thereto. The argument directed to the date of the passage of the act overlooks the essential nature of a conspiracy, which may be established by proof of attendant facts and circumstances raising the natural inference that the defendants were engaged in an unlawful conspiracy. It is

not necessary that the conspiracy be expressed in formal agreement. It may be established by inference from concert of action. Davidson v. United States (C. C. A. 6) 274 F. 285, 287; Remus v. United States (C. C. A. 6) 291 F. 501, 512. Persons joining and participating in the conspiracy after its formation are equally liable. Calcutt v. Gerig (C. C. A. 6) 271 F. 220, 222, 223, 27 A. L. R. 543; Rudner v. United States (C. C. A. 6) 281 F. 516, 519. A conspiracy may be a continuous agreement. Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136; Rudner v. United States, supra, at page 519. Once established, it may properly be found to continue until consummation of purpose or abandonment. Remus v. United States, supra.

It was permissible to show that the fraudulent agreement was entered upon long before the Dyer Act took effect, and was kept up after the passage of that act. Heike v. United States, 227 U. S., at page 145, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128. The conspiracy charged was not only morally wrong, but was presumably punishable under state statutes previous to the Dyer Act; and if after that act took effect the parties to the conspiracy not only did not withdraw from it, but consciously continued in its prosecution, one or more of the parties performing in the Eastern district of Michigan overt acts thereunder, the parties thereto would be as guilty as if the conspiracy was first formed on or after October 29, 1919. Every overt act committed was the act of all the conspirators, by virtue of their unlawful plot. Brown v. Elliott, supra. And see Grayson v. United States (C. C. A. 6) 272 F. 553.

There was substantial testimony tending to support a finding of each of the facts referred to as sustaining a conviction. Under the court's charge, which is not in terms assailed, conviction was permissible only upon such finding. We therefore think the court rightly admitted, and so rightly refused to strike out, the testimony of acts and transactions occurring before October 29, 1919, and although not set forth in the indictment.

Plaintiff in error also contends that there was error in the refusal to direct verdict in his favor, and in the submission to the jury of the question of his participation in the conspiracy. We think this proposition not sustainable. We think it not of controlling importance whether or not there was testimony that no cars which left Michigan after October 29, 1919, were intended to go to the persons charged in the indictment, although we think it open to inference that one at least was intended for Burroughs if he would take it. There was, however, evidence that after the date last named Shanley made a trip to Detroit to see Basden about operations under the conspiracy, and that Basden made trips to Bridgeport or New York about Christmas, 1919, and in January, 1920, with reference to the general subject of the conspiracy, at which time Burroughs made the announcement that Basden was to be stationed at the Commodore Hotel, in New York, as a "tracer" of cars. Basden also made a trip to New Orleans somewhere about the holidays. These, if established, were all overt acts committed after the Dyer Act took effect.

The most important question arises over the contention that plaintiff in error was not shown ever to have been connected with the conspiracy, and that he did not know the cars bought and shipped were stolen, but was merely imposed upon by Burroughs. Plaintiff in error seems to have begun negotiating for (if not buying) automobiles from Burroughs in August, 1919. He bought of the latter three of the stolen cars shipped from Detroit, viz.: a Buick early in October, 1919, a Hudson about October 8th, and a Cadillac touring car later. There was substantial testimony that each of those cars was bought by Nyquist at prices substantially below the market. The Buick car was shipped by Nyquist to Sweden December 12, 1919. There is substantial testimony tending to show that Burroughs and Nyquist were in intimate personal relations, and tending to rebut the contention of Nyquist's innocence of the real nature of Burroughs' transactions. The wife of White tells of Nyquist spending an evening playing cards and otherwise socially engaged at her apartments, and of "whispering conversations" between those two men, apparently at some time between October, 1919, and the latter part of January, 1920. Basden testifies to a conversation with plaintiff in error in January, 1920, in Kearney's saloon, across from Nyquist's place of business, at which Nyquist is said to have told Burroughs that he had paid a certain detective on the New York police force $1,000, that he was to pay him $4,000 more before he (Nyquist) went to Sweden, and that he was going there to check up the stolen cars that had been sent over there. Nyquist's employé, Thourot, testified that when the Hudson car was bought from Burroughs the latter told Nyquist to put on other license

plates, which was done by Thourot under Nyquist's direction; also that Nyquist "had better not keep the car in New York"; that "some one might find it"; whereupon Nyquist asked Thourot to take the car home, as the latter lived in New Jersey, which was done. It was testified that the Hudson car was painted and varnished before its shipment to Europe by plaintiff in error December 12, 1919.

Thourot testifies that Nyquist told him that Burroughs brought the Cadillac touring car in question to his house about midnight on Sunday and got him out of bed and sold him the car for $3,000. The check turned out to be for $2,540, was dated November 13, 1919, and was made payable to bearer, a practice said to have been unusual. Nyquist says the car was bought by him on Monday, October 27th (Burroughs having come to his house at 8 or 9 o'clock the previous evening, asking if Nyquist wanted to buy a Cadillac car), and that the check was dated ahead about two weeks for lack of funds. Thourot says the check was dated ahead about ten days, which, if accurate, would mean that it was given about November 3d (one week after October 27th), and thus after the Dyer Act took effect. Burroughs says the check was dated a month ahead. It was open to the jury to believe Thourot. The latter testified that Nyquist had the tires taken off the Cadillac and new tires put on, and had New York license plates put on while the car was in New York, and that the motor number was scratched off when first seen by him. Nyquist says the car remained in his possession after he bought it until early in December, when he sold it to a named Swedish banker, having previously tried to sell it in New York City. The car was found by police authorities crated and about to be shipped to Sweden. The investigator for the Automobile Underwriters' Detective Bureau testified that an examination of the crated car made on December 15, 1919, showed that the number plate on the dash, as well as the motor numbers on the fanshaft housing and on top of the crank case had been altered, the generator number filed off, and the casting number of the transmission mutilated. A representative of the Investigation Bureau of the Department of Justice gave substantial corroboration of this testimony.

Assuming that plaintiff in error bought the Cadillac car before October 29th, we think the testimony referred to regarding his statements and actions, including the mutilation of the numbers on the Cadillac car, had a substantial tendency to prove his connection with the conspiracy and its continued existence after October 29th. If he knew, or had reason to believe, that the cars so shipped to Europe had been stolen, their shipment in December, 1919, would constitute a substantial violation of the Dyer Act, unless such situation might be modified by the question mooted by this court, whether the stolen property had previously come to rest. Katz v. United States (C. C. A. 6) 281 F. 129.

But this prosecution is not for a substantive violation of the Dyer Act, but for a conspiracy, and we think such shipments, if made with guilty knowledge, were none the less competent evidence of an existing conspiracy and of the participation of plaintiff in error therein. It was not necessary to conviction for conspiracy that it be consummated (Goldman v. United States, 245 U. S. 474, 477, 38 S. Ct. 166, 62 L. Ed. 410), nor need the overt act be a crime (Manning v. United States [C. C. A. 8] 275 F. 29, 32). The matters hereinbefore referred to, as testified to by others and as thought to have a tendency to show guilty knowledge on the part of plaintiff in error, were denied by him. With reference to the motion to direct verdict, we have, of course, stated the case in its aspect most favorable to the government. The fact that, after the Cadillac touring car was seized by the authorities, while awaiting shipment to Europe, plaintiff in error required Burroughs to reimburse him therefor, affects only the weight of the evidence generally. Naturally the seizure of the Cadillac touring car on December 15, 1920, would put an end to whatever unlawful buying and selling relations had previously existed between plaintiff and Burroughs.

Several additional questions of minor importance are presented. We content ourselves with saying, without discussion, that we find no reversible error, if, indeed, any error, in any of them. We see nothing to indicate that plaintiff in error has not had a full and fair trial.

The judgment of the District Court is affirmed.