BANNING et al. v. UNITED STATES.

No. 9071.

Circuit Court of Appeals, Sixth Circuit.

Aug. 28, 1942.

As Amended on Denial of Rehearing Oct. 7, 1942.

William C. Wines, of Chicago, Ill. (Joseph E. Green, of Chicago, Ill., and William G. Comb, of Detroit, Mich., on the brief), for appellants.

Vincent F. Fordell, of Detroit, Mich. (John C. Lehr, Francis X. Norris, and Thomas P. Thornton, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellants, Herman Banning and Frank Williams, together with John McMann, were indicted for a violation of the National Stolen Property Act, Title 18 U.S.C.A. §§ 413 to 419, inclusive. The indictment contained two counts, the first charging appellants with conspiring with each other, McMann and others unknown to the Grand Jury, to transport in interstate commerce, jewelry and diamond rings of the approximate value of $11,000.00 knowing same to have been stolen, and the second count charging appellants and McMann with the substantive offense of transporting in interstate commerce, stolen property.

The indictment alleged in the first count that the conspiracy had its inception on or about the 26th day of August, 1940, and continued up to and included May 23, 1941, the date of the indictment. Three overt acts were alleged, namely, that on August 28, 1940, in the city of Detroit, Michigan, the appellants, together with McMann, held up Samuel B. Weiss, a jewelry salesman, at the point of a gun and forced him by threats and compulsion to drive about Wayne County for a period of approximately three hours, an automobile in which he was riding; also that near Bellville, Michigan, the appellants, together with McMann, forcibly took from Samuel B. Weiss, two bags containing jewelry and diamond rings and on the same day appellants, together with McMann, fled in an automobile from Wayne County, Michigan, taking the jewelry with them.

The second count charged appellants and their co-defendant with transporting the jewelry and diamond rings from Wayne County in the State of Michigan to the city of Chicago in the State of Illinois.

Defendant, John McMann, plead guilty to each count and testified for the United States. Appellants were found guilty and each was sentenced to serve a term of ten years in the penitentiary on each count of the indictment, the sentences to run consecutively. The applicable statute authorizes a maximum sentence for conspiracy

of ten years. 53 Stat. 1179, Sec. 5, 18 U.S.C.A. § 418a.

Exceptions were taken in behalf of appellants to several rulings of the trial court in admitting, over their objections, certain items of testimony which they claimed were incompetent and highly prejudicial and exception was also taken to certain remarks made by the trial judge in the course of the trial which appellants claimed were improper and prejudicial. First, among others, appellants object to the United States putting in evidence in chief in detail the robbery of Sol Roseman, a jewelry salesman, in Fort Wayne, Indiana, which took place on October 16, 1940.

McMann testified that he had become acquainted with his co-defendants in 1925 or 1926 in the Jefferson City, Missouri, State Prison, where he was serving a sentence. He stated he was released from the penitentiary in March 1940 and that in the latter part of April the same year, he was walking on the streets of Detroit when he was stopped by appellants who were in a car. He stated he got into the car and while driving along with appellants they advised him they had a good racket of robbing jewelry salesmen and invited him to join them and make some money which he agreed to do. The witness also said that the week following the robbery of Weiss which he admitted and detailed, that he, Banning and Williams again started on the road looking for another victim. He said they drove through Ohio, Indiana, Illinois and Kentucky and usually stayed out a week each time, coming into Chicago for the week-ends. He said three guns were in the car at all times. He stated that on August 16, 1940, he, Banning and Williams, located a jewelry salesman at Fort Wayne, Indiana, by the name of Sol Roseman, who was staying at the Keenan Hotel, and that Williams told him (the witness) to keep his eye on Roseman. He said he followed Roseman from the hotel to an eating place across the street and then back to the hotel where he waited in the lobby until Roseman checked out. By prearrangement, Williams was waiting in the car and picked McMann up and the two of them drove to the interurban station where Banning, also by prearrangement, was waiting and watching for Roseman who was expected to go there from the hotel. When Roseman came out of the ticket office to board the interurban, McMann and Banning were waiting for him and Williams was waiting in front of the station in the car, Banning with a pistol and McMann with a pistol and a blackjack. When Roseman stepped out on the platform, McMann hit him with the blackjack and McMann stated that he "kind of knocked him down" and that Banning then hit him on the head with his pistol. The witness testified he had been instructed by Banning and Williams to snatch the smaller of two bags Roseman was carrying, which he did, and that he and Banning then ran for the car in which Williams was waiting with the motor running and as they ran some of the ten or twelve people at the station tried to stop them but Banning flashed his gun and told them to stand back which they did. The witness testified the three of them drove to Chicago and after considerable negotiation with a man named Myers, the jewelry was sold for $15,000.00 and the money divided evenly. McMann said that after the robbery of Roseman, he worked no more with Banning and Williams, but that he later robbed several liquor stores to which he plead guilty in Chicago and for which he was given a life sentence.

The manner in which Roseman was robbed was testified to by him. In the course of his testimony he said he was struck so hard on the head that he was stunned and that when he came to he saw two men running toward the end of the depot, one tall and one short and that he saw a car standing by where they were running with a third man in it. He said he had to have three stitches taken in the back of his head and two in the front. Two eye witnesses corroborated McMann as to the circumstances surrounding the robbery, but no one identified any of the parties who participated in the assault and robbery. Appellants contend that this evidence was inadmissible to show a conspiracy as charged in the first count on the part of either appellant, because it does not relate to the matter or offense alleged in the indictment.

■ It is settled law that when a person is placed upon trial for violation of a criminal statute, he is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment, and proof which shows that the accused is guilty of other crimes at other times even though of the same nature, is not evidence of the commission of the

crime charged unless the other offenses which the evidence discloses are connected with the offense for which defendant is being tried. Eley v. United States, 6 Cir., 117 F.2d 526.

In the development of the case at bar, the evidence concerning the robbery of Roseman was so interwoven with the evidence showing the scheme, plans and purposes of appellants and their co-defendant, McMann, to effectuate the conspiracy charged in the indictment, that the court committed no error in admitting it as it had such direct relationship to the charge laid in the indictment as to be a part of it. The mere fact that it tended to show that appellants had committed another offense did not render it incompetent or irrelevant on the issues to be tried by the jury. Johnson v. United States, 6 Cir., 82 F.2d 500; Shea v. United States, 6 Cir., 236 F. 97; United States v. Seeman, 2 Cir., 115 F.2d 371.

The fact that the witness McMann was a confederate of appellants and the only witness who specifically testified to their being participants in the robbery of Roseman is immaterial on this appeal. McMann was a competent witness and although the jury could have found that his character was so bad as to permit an inference that evil and good had the same meaning to him and that it was a matter of indifference to him what he stated on the witness stand and disbelieved everything he said, his credibility and the weight to be given to his testimony were for the jury. Valdez v. United States, 244 U.S. 432, 441, 37 S.Ct. 725, 61 L.Ed. 1242; Nibbelink v. United States, 6 Cir., 73 F.2d 677; Albert v. United States, 6 Cir., 281 F. 511. The necessity, if any, of corroborating McMann is not an issue on this appeal. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168.

Morris Friedman, a member of the police department of the city of Chicago, testified that he arrested appellant Banning in Chicago on May 19, 1941, on the charge laid in the indictment and at that time Banning asked if he was being arrested for a State or Federal offense and when told he was being arrested on a United States warrant, said "there is a pistol in the compartment of my car. You will find it anyway when you search the car." The witness then stated he searched Banning's car and found in the glove compartment a Colt automatic pistol fully loaded which was put in evidence over the objection of appellants.

John Pigga, Chief of Police of Calumet Park, Illinois, a suburb of Chicago, testified that there was found in appellant Banning's apartment at 6500 N. Clairmont, Chicago, at the time of his arrest, a brief case about 6 in. high and about 1 ft. long with a zipper on it, that he was present in the State's Attorney's office in Chicago when this case was opened and that it contained two .38 Colt revolvers, 50 rounds of ammunition, 1 homemade blackjack with b. b.'s in it, adhesive tape and a mask and that from his experience as a police officer, he knew these appliances were the usual tools of a highwayman. Appellants insist that all this evidence was incompetent and so prejudicial as to require a reversal.

In our opinion the testimony concerning the property found in appellant's possession either in his automobile or apartment at the time of his arrest was competent.

It is proper to admit evidence of the arrest of the accused and the attending circumstances, where such circumstances logically connect the accused with the perpetration of the crime. It is a matter of common knowledge that those who commit the crime of highway robbery use such appliances as were put in evidence and testified about in the case at bar. McMann testified that it was the practice of appellants and himself to keep pistols in the car during their quest for victims. He also testified that in the robbery of Roseman on October 16, 1940, Banning struck the victim on the head with a pistol. It was charged in the indictment that the conspiracy to transport stolen property in interstate commerce was in being at the time of Banning's arrest.

Weapons, instruments and articles found in the possession of the accused at the time of his arrest which, although not identified as those actually used, but similar thereto, or which from the circumstance of the finding, justify an inference of the likelihood of their having been used, are admissible to show that the accused had them for the purpose of overcoming his victim or to show a design or plan, the carrying out of which required their use. Pedersen v. United States, 2

Cir., 271 F. 187. This rule applies even though the arrest occurs after the crime has been committed if it may be inferred that such articles were used in the commission of the offense charged. The articles found constitute some proof that implements of their character were probably employed in the present case. It is true the ability to commit a crime does not evidence its commission, but the physical capacity to commit a crime, plus the possession of articles necessary to commit it, and the skill, knowledge or familiarity with a special means employed in its commission have a probative value. Commonwealth v. Williams, 2 Cush., Mass., 582, 583; State v. Dubois, 49 Mo. 573; Williams v. People, 196 Ill. 173, 63 N.E. 681; People v. Gregory, 130 Mich. 522, 90 N.W. 414.

Each of the appellants testified on his own behalf and in the course of his testimony in chief each undertook to give a chronological outline of the events of his life from his youth to the time of his present arrest. Appellant Williams testified that he was first convicted for the crime of robbery in the State of Texas in 1919 and that 'he was again convicted in 1921 for robbery in Missouri and sentenced to twenty years in the penitentiary for that offense, and released on parole after serving eight years. He testified that after his parole, he had not been arrested for any offense and in detailing his activities from that time he gave the places where he had worked and undertook to tell the jury all of his movements. Appellant Banning stated he was first arrested and convicted in 1923 for burglary and again arrested and convicted in 1925 for the same offense and 'sent to the penitentiary at Jefferson City, Missouri, for fifteen years from which place he was released in March, 1931. He stated that in 1931 he was sentenced to 364 days for carrying a concealed deadly weapon while on parole and that he had not been arrested since that time.

In response to questions on cross-examination Williams testified he was arrested at Nashville, Tennessee, in February, 1940, for a jewelry robbery in Omaha, Nebraska, for which offense he was subsequently acquitted. He was also asked who testified in that case in his behalf and whether all of his witnesses attempted to establish an alibi for him and in answering he admitted this was true. He also admitted he was depending on an alibi in the present case.

Appellant Banning on cross-examination testified that he was suspected of a bank robbery in Council Bluffs, Iowa, July 2, 1931, and while attempting to avoid arrest was shot by the police and sent to the hospital. He stated he was innocent of that offense and was not tried for it. He also stated that because of his previous criminal record, he did not sue the police for shooting him. Banning denied on cross-examination that on March 22, 1941, he offered the Chief of Police of Calumet Park, Illinois, $700.00 to falsify the record in the Chief's office to show that he (Banning) was arrested in Calumet Park on November 13, 1939.

On cross-examination appellants disclosed that in February, 1940, they made a trip in an automobile with Howard Graves from Chicago, Illinois, to Nashville, Tennessee, and while there the appellants were arrested on a fugitive warrant for the robbery of a jewelry salesman in Omaha, Nebraska, November 13, 1939, and Graves was arrested for another offense not disclosed in the record. Appellant Williams testified that he had not previously known Graves and that he understood from Graves that he was going to California and as appellant wished to go to Oklahoma he asked Graves to take him that far. He also said that for some reason, unknown to him Graves was traveling from Chicago to California by way of Nashville.

Appellant Banning testified that he had known Graves probably since 1935 or 1937, having met him in a gambling house at Minneapolis, Minnesota, where Banning was a customer and that he and Graves were arrested by an agent of the Federal Bureau of Investigation for a bank robbery in 1938, but were later released without trial. Banning also stated that two or three nights before he, Williams and Graves started to Nashville he met Graves in a night club in Chicago and ascertained that he could get a ride with him from Chicago to Hot Springs, Arkansas, where Banning wished to go to meet his wife who was there with his car. Banning also testified that he did not again see Graves after their arrest in Nashville. Appellant Williams was asked on cross-examination if he did not know, subsequent to Graves' arrest in Nashville, that Graves was convicted for a jewelry robbery at Cleveland, Ohio, and sent to the penitentiary, to which question he gave a negative answer.

George Smyth, a sergeant detective of the Cleveland Police Department, testified in rebuttal that he was in the court room at Cleveland, Ohio, when Howard Graves was sentenced from ten to twenty-five years for armed jewelry robbery, and that he knew of his own personal knowledge that this was the same Howard Graves who was arrested in Nashville, Tennessee, on February 12, 1940.

John Pigga, Chief of Police of Calumet Park, Illinois, in testifying in rebuttal for the United States, stated that Banning, when requesting him to falsify his records, said that "he had the finger on him by a cab driver in Omaha, Nebraska, in a $25,-000.00 jewelry robbery" and that as a police officer he knew that Banning meant he was implicated in a jewelry robbery, and offered him $700.00 if he would falsify his records to show that Banning was arrested in Calumet Park on November 13, 1939. Appellants reserved proper exceptions to the foregoing evidence.

█ The extent of cross-examination and rebuttal testimony with respect to an appropriate subject of inquiry is within the sound discretion of the trial court, which may exercise a reasonable judgment in determining when the subject is exhausted. Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624.

We have to decide whether the trial court abused its discretion in the admission of the evidence which appellants allege was error and, if so, whether said errors were prejudicial. District of Columbia v. Clawans, 300 U.S. 617, 632, 57 S.Ct. 660, 81 L.Ed. 843.

█ When a defendant takes the witness stand in a criminal case, he sheds his cloak of constitutional immunity from self-incrimination and stands before the bar in the role of a witness and as such becomes subject to cross-examination in the same manner and to the same extent as any other witness. The rule generally prevails in criminal cases in Federal courts that the cross-examination must be confined within reasonable bounds to the subject of the direct examination. Sawyear v. United States, 202 U.S. 150, 167, 26 S.Ct. 575, 50 L.Ed. 972, 6 Ann.Cas. 269; McKnight v. United States, 6 Cir., 122 F. 926; Hendrey v. United States, 6 Cir., 233 F. 5. Though the credibility of a defendant who has testified may be impeached in the same manner and to the same extent as any other witness. Raffel v. United States, 271 U.S. 494, 499, 46 S. Ct. 566, 70 L.Ed. 1054; Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078; Reagan v. United States, 157 U.S. 301, 305, 15 S.Ct. 610, 39 L.Ed. 709.

█ Questions propounded on cross-examination for the purpose of impeachment should be confined to acts or conduct reflecting upon the defendant's integrity or veracity or so pertain to his personal turpitude as to indicate moral depravity or degeneracy on his part to an extent that would likely render him insensible to his obligation to speak the truth when under oath. Alford v. United States, supra; Coulston v. United States, 10 Cir., 51 F.2d 178.

Applying the foregoing principles of law to the questioned evidence, it is clear that the trial court did not abuse its discretion and that the admitted evidence was of some probative value except in the instances later pointed out. Some parts of it were competent to throw light on the issues in the case and other parts affected the credibility of appellants as witnesses.

█ The crime of conspiracy to transport stolen property in interstate commerce is frequently, if not generally, committed under conditions which preclude the possibility of observers. This being so, the necessary proof is sometimes supplied by the use of secondary facts or circumstantial evidence. In such cases evidence of collateral acts by the persons involved properly may be received.

█ Where it was proved, as in the case at bar, that property had been stolen and transported in interstate commerce, it was not irrelevant nor improper to prove that the appellants were members of a band traveling over the country looking for victims. Their association with persons engaged in committing such offenses had a tendency to show the conspiracy and the means, preparation and disposition to commit the crime charged. Kanner v. United States, 7 Cir., 34 F.2d 863. This rule is clearly applicable where the defendants on trial deny participation in the offense. The association with Graves was so connected in point of time and so similar to appellant's other relations that the same motive may be reasonably imputed to all of them. When the object is to show system, subsequent as well as

prior collateral offenses may be put in evidence and from such testimony, identity or intent can be often shown. Powers v. United States, 223 U.S. 303, 316, 32 S.Ct. 281, 56 L.Ed. 448; Davis v. United States, 6 Cir., 107 F. 753; Wallace v. United States, 7 Cir., 243 F. 300; York v. United States, 6 Cir., 299 F. 778; Johnston v. United States, 9 Cir., 22 F.2d 1; Nyquist v. United States, 6 Cir., 2 F.2d 504; Metzler v. United States, 9 Cir., 64 F.2d 203. The character of Graves had some probative value in rebutting the statements of appellants that their journey with him was in a peaceful pursuit. Sawyear v. United States, 9 Cir., 27 F.2d 569; Blockburger v. United States, 7 Cir., 50 F.2d 795.

 It is a matter of common knowledge that those who commit crimes usually plan to avoid detection and punishment if detected. Plans to avoid detection and acts to avoid punishment are an integral part of the offense. Appellant Banning's proposition to the witness Pigga to falsify the records of the Police Department of Calumet Park, Illinois, occurred on March 22, 1941, at which time according to the evidence in the record the present conspiracy was in full operation. Had Banning been tried for and convicted of the alleged offense in Omaha, his further participation in the present conspiracy would have been terminated. It is a fair inference that his purpose in approaching Pigga was not only to prepare his defense in the Omaha case, but also to avoid termination of his connection with the present conspiracy.

 Attempts are often made to convict persons of crime by showing they have been arrested on previous occasions or that they have been confined in jail, or have committed other offenses having no connection with or relation to the crime for which they are on trial. Such evidence, standing alone, is highly prejudicial and its admission universally condemned. We have no intention of modifying this rule of exclusion, but in the case at bar appellant Banning laid the foundation for the cross-examination which brought out the fact that he was suspected of a bank robbery in Council Bluffs, Iowa, July 2, 1931. In his examination in chief in detailing his past offenses and the times he had been arrested he omitted any statement with reference to his arrest in Iowa.

 It frequently happens that on direct examination of a witness as to a conversation, transaction or other matter, counsel will bring out only such parts as are favorable to the party he represents. When this occurs, it is the right of the cross-examiner to put the trial court in possession of the full details respecting the matters within the scope of the direct examination. The questioned evidence was competent and in the light of the circumstances under which it was introduced it is immaterial that some of it related to offenses other than the one stated in the indictment. Murray v. United States, 7 Cir., 10 F.2d 409; Davis v. United States, supra.

Appellant Frank Williams was asked on cross-examination whether in 1918 when he was being taken by a Deputy Sheriff from Janesville, Texas, to Dallas, Texas, to serve a prison sentence for robbery, he had thrown red pepper in the deputy's eyes, taken his pistol away from him and shot him, to which query he answered "no." He said this episode occurred at the time he was being transported, but that another prisoner was the guilty person and that he took no part in it. Appellant Williams urges that the question was incompetent and highly prejudicial because irrelevant and that it tended to humiliate and disgrace him.

 The admission of evidence which is irrelevant and immaterial because the facts sought to be proved are remote does not render such admission reversible error, unless the accused was prejudiced or harmed thereby or deprived of substantial rights. Error was committed by the court in permitting the District Attorney to ask this question but, though improperly permitted, the inquiry related to a matter so remote and irrelevant that appellant Williams was not prejudiced sufficiently to constitute reversible error when this inquiry is considered in the light of all the other evidence. Appellant answered the question favorably to himself and there was no effort to rebut his answer. Thus, as the record stands there is no evidence that he committed the offense about which the District Attorney questioned him. Robinson v. United States, 6 Cir., 30 F.2d 25; 28 U.S.C.A. § 391; Salerno v. United States, 8 Cir., 61 F.2d 419; Morgan v. United States, 8 Cir., 98 F.2d 473; Gowling v. United States, 6 Cir., 64 F.2d 796.

During the course of the trial, the District Attorney asked appellant Williams,

"What was the nature of your defense you offered at the time" (referring to the trial of appellant Williams in Omaha, Nebraska). The court sustained appellant's objection but later in the trial on its own motion, reversed this ruling and the trial judge, in so doing, stated "I shut out the Government from showing the defense he used in Omaha in the Omaha case. I will reverse myself on that. * * * The theory of the Government is here that this man is putting up an alibi and they are trying to show that in another case, in a similar instance where he was arrested, it was the same defense, an alibi."

The propriety of this statement by the court and the cross-examination of appellant Williams in which he was compelled to admit that his defense in the former case was an alibi, is vigorously assailed.

Appellant Williams testified on direct examination that after he was released from the Jefferson City, Missouri, penitentiary in the latter part of 1931, or the first part of 1932, he had not been arrested for or convicted of any other crime. He further stated that from 1932 to the date of his arrest for the present offense he had continuously lived with his wife and had been engaged in the business of conducting a dry cleaning establishment in Chicago, Illinois, and was also the owner and operator of an apartment building in Chicago. He also stated that he was engaged in the business of buying and selling oil leases jointly with his brother-in-law.

■ The rule prevails that it is competent on cross-examination to develop all circumstances within the knowledge of a witness which qualify or destroy his direct testimony, although strictly speaking they may constitute new matter and are a part of the cross-examiner's own case. Standing alone, appellant Williams' testimony on direct examination would have left the jury with an erroneous and distorted view of his activities during the period of time covered by the present indictment.

■ The fact that appellant Williams was arrested and tried at Omaha, Nebraska, although acquitted, as well as the circumstances of that trial, had a tendency to qualify or destroy the facts which he had voluntarily testified to on his direct examination. When applied to this case, the foregoing circumstances affected the credibility of the witness.

■ In his ruling, the trial judge used inept language and did not state the proper basis for admitting the cross-examiner's questions. However, in view of the competency of the evidence elicited from appellant Williams, the error, if any, which was committed by the trial judge by reason of his remarks was not sufficient to require a reversal, and was harmless.

■ Lastly appellants urge as error justifying reversal, that in referring to a witness who was an alibi witness for appellant Williams in the Omaha trial, the trial judge said to Williams, "You told about that fake detective, what do you call him, private detective, as former detective on the force." No exception or objection was taken at the time to the court's remark. A court of review will not consider objections not made during the trial and shown by the record unless it appears from the whole record that the error complained of, but to which no objection was made nor exception taken, clearly caused a miscarriage of justice. Optner v. United States, 6 Cir., 13 F.2d 11.

■ We find no miscarriage of justice here but think the remarks of the trial judge were improper. In jury trials, the judge should preside with impartiality and should be circumspect in his language and conduct so as to avoid any intimation of bias or prejudice.

A fair appraisal of the evidence in the record indisputedly reveals a cowardly robbery of an unarmed jewelry salesman and the subsequent transportation in interstate commerce of the fruits of the crime. The overwhelming weight of the evidence shows that both offenses were committed by the joint action of several persons and the participation of appellants in the offenses is supported by an abundance of evidence.

■ By statute (28 U.S.C.A. § 391) we are directed to render judgment after an examination of the entire record, without regard to technical defects or exceptions which do not affect the substantial rights of the parties. We find no errors in the present record which were substantially prejudicial to either of the appellants. Such errors as appear must be regarded as harmless. Glasser v. United States, 315 U. S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680.

Judgment affirmed.