**UNITED STATES of America,
Appellee,**

v.

**Kenneth Lowell GORDON, Appellant.**

**No. 71–1266.**

United States Court of Appeals,
Eighth Circuit.

Feb. 9, 1972.

Rehearing Denied Feb. 25, 1972.

William H. Bates, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Bert C. Hurn, U. S. Atty., Sheryle L. Randol, Asst. U. S. Atty., for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and WEBSTER, District Judge.*

MATTHES, Chief Judge.

Count I of the indictment charged that appellant conspired with seven other named persons to violate 18 U.S.C. §§ 2113(a), 2113(b), 2113(c), and 2113(d). Count II charged that appellant aided and abetted other named persons in the commission of bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d). After all of the evidence was in, the

---

* Eastern District of Missouri, sitting by designation.

court indicated that appellant's motion to elect would be granted. Thereupon the Government abandoned the conspiracy count and it was dismissed. The jury, under appropriate instructions, found appellant guilty under Count II of the indictment. This appeal is from the judgment of conviction entered on the jury's verdict.[1]

Appellant contends six errors were committed which had the effect of denying him a fair trial. His seventh contention goes to the sufficiency of the evidence. We first consider the latter contention.

The following facts are not in dispute.

1. The Suburban Bank of Kansas City, Missouri was held up and robbed on November 15, 1970 by Kenneth Leon Lewis, Jr., Leonard Irons, and Arthur Hill, three young black males. One or more was armed with revolvers and one shot was fired as they were leaving the bank.

2. The deposits of the bank were insured by the Federal Deposit Insurance Corporation.

3. The three hold-up men named above were apprehended shortly after the robbery, along with appellant and King Henry Roberson, Michael Dixon, Roosevelt Johnson and Brenda Sue Webb, all of whom aided and abetted Lewis, Irons and Hill. Hill was shot in attempting to elude the police officers.

The only fact issue in dispute related to appellant's implication in the offense.

The Government prosecuted appellant on the theory that he conceived the plan to rob the bank, actively participated in working out the details, and persuading Lewis, Irons and Hill to commit the offense. Appellant disclaimed any participation in the hold-up, and denied knowing anything about the offense until after it had been consummated. There was, however, an abundance of evidence to support the Government's case. The

confederates Lewis, Johnson, Webb, Dixon and Irons were Government witnesses and their testimony implicated appellant. Only Hill, who was in a hospital at the time of trial, did not testify. King Henry Roberson was a witness for appellant, but his testimony, negative in nature, was to the effect that he did not know appellant was one of the behind-the-scenes individuals who had planned the robbery. Appellant testified and denied any participation in the hold-up. However, he admitted meeting with the persons above named on one or two occasions prior to the commission of the offense. He also admitted a prior felony conviction and service of sentence.

A full review of the evidence is not required. It is sufficient to observe that there was evidence from which the jury could and manifestly did find that appellant actively participated in aiding and abetting the commission of the crime. He furnished guns, the ski masks, and rubber gloves. His automobile was used as a get-away car. He also gave Brenda Sue Webb, the driver of his automobile, his wife's driver's license for use while she was operating the vehicle. We hold the Government's evidence implicating appellant was strong and convincing.

We pass now to the claimed procedural errors.

I.

Appellant was not deprived of the effective assistance of his attorney because the latter was denied admittance to the Jackson County Jail on Sunday, April 4, 1971, the day before the trial commenced. Concededly, appellant and his lawyer had conferred on Thursday, April 1. When, on Monday morning, the Sunday incident was called to the attention of Chief Judge William H. Becker, who presided over the trial, Judge Becker provided that appellant would have

---

1. The court sentenced appellant to a term of 17 years and adjudged that appellant may become eligible for parole in accordance with the provisions of 18 U.S.C. § 4208(a) (2).

the opportunity to confer again with Mr. Bates, his lawyer, before the start of the trial. This appeared to satisfy all concerned. At least no objection was made to the suggested procedure. In any event, there is nothing in the record to show any prejudice resulted because appellant did not confer with his attorney on the day before the trial.

## II.

■ Appellant complains because the court denied his motion to strike juror Paddock from the jury list. He claimed that Paddock's prior service "on a couple of court martials" disqualified him. Again, we find no error. Judge Becker, who conducted the voir dire of the panel, carefully explored the qualifications of all prospective jurors, including Paddock. Several challenges were sustained. We would be required to engage in speculation to hold that Paddock was disqualified simply because of his court martial experience.

## III.

■ Appellant contends he was denied a fair trial and due process because there were only two blacks on the panel of 36 from which the jury was selected. At the conclusion of the voir dire examination, counsel for appellant challenged the panel and moved that new jurors be summoned. Judge Becker's response to the motion was:

"The motion will be denied. We don't hand pick jurors. It was to insure a random selection and a proportionate number of all ethnic background[s] that the Congress passed the Jury Selection and Service Act of 1968, pursuant to which the jury plan for this district was adopted and implemented. It specifically provided in the rationale of the jury plan that no one has a right to any particular kind of jury but only a jury which is drawn by random selection from a cross-section of the community.

"This jury is drawn by random selection in at least three steps.

First, there is a random selection from the voting lists or registration records, carefully designed to see that no one is hand selected. Then, many thousands of names so selected are placed in a master jury wheel, and by drawing in a lottery the numbers are drawn out and those jurors are drawn by chance. Then, after the qualification questionnaires are sent out, those that are qualified are placed in a qualified jury wheel where it is spun again and the names are drawn out. And then they are recorded in the order they are drawn and they are called in the order they are drawn."

Tr. pp. 88–89.

■■ We are familiar with the plan under which juries are selected in the Western District of Missouri, and in every District in the Eighth Circuit. Pursuant to 28 U.S.C. § 1863 the plans for all district courts in this Circuit were approved by a reviewing panel consisting of the Judicial Council of this Circuit and the Chief Judge of the district whose plan was under review. The Western District plan is a comprehensive one and it fully comports with the requirements of the 1968 Random Jury Act. The Constitution does not require that every class, subclass or identifiable group must be represented on every jury list, but only that no systematical, intentional or other unlawful exclusion of persons or groups exist. United States v. Brickey, 426 F.2d 680, 683 (8th Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970). Moreover, "a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn." Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965).

## IV and V.

■■ Appellant submits under point IV that the court erred in admitting the ski masks into evidence and under point

V, complaint is made because the court permitted two pistols or revolvers to be introduced as part of the Government's case. There is no merit in either contention. The proper foundation was laid for introduction of the ski masks. Three witnesses testified that defendant had supplied the ski masks to the robbers. Failure of the Government to ask those witnesses to identify the exhibits goes only to the weight which the jury might choose to give such testimony. United States v. Chibbaro, 361 F.2d 365, 379–381 (3rd Cir. 1966). The conflict in the testimony of two of the witnesses as to identification of the guns was of no significance. The undisputed fact is that firearms were flourished by the robbers and at least one of the weapons was identified by one of the participants.

### VI.

Finally, appellant complains because the court prepared an answer to a question submitted in writing by the foreman of the jury during deliberation by the jury. The record reveals that upon receipt of the paper containing the question the judge read it to appellant, his attorney and to the prosecutor. Thereupon, Judge Becker prepared and submitted to the parties a response to that inquiry. Counsel for appellant found no fault with the form or substance of Judge Becker's response, but objected generally to giving any further instruction. The record does not reveal with clarity whether the jury returned with its verdict before or after the answer was communicated to it. But assuming the additional instruction was received and considered by the jury, we find no error. There is no claim that the additional instruction misstated the applicable law. Further, it is settled that the request for additional instructions is a matter addressed to the sound discretion of the judge. Gregory v. United States, 365 F.2d 203, 206 (8th Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967); Whitlock v. United States, 429 F.2d 942,

946 (10th Cir. 1970); Wilson v. United States, 422 F.2d 1303 (9th Cir. 1970). We find no abuse of discretion.

From our study of the record it is abundantly clear that from the inception of the trial, Judge Becker meticulously supervised all proceedings and was careful to assure that appellant received a fair trial. If there was ever a case tried free of prejudicial error, this is such a case.

The judgment of conviction is affirmed.