## Commonwealth *v.* Ford, Appellant.

Argued November 20, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused April 12, 1973.

*Walter T. Darmopray,* with him *Hamilton, Darmopray, Malloy & Milner,* for appellant.

*Linda W. Conley,* with her *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1973:

Appellant, Albert Ford, indicted for two murders arising out of the same incident, was tried by a jury and found guilty of murder in the first degree on both indictments. The jury determined that the sentence on the murder charges should be life imprisonment.[1] Following a denial of motions for a new trial and in arrest of judgment appellant filed this appeal. He alleges three trial errors which we shall discuss seriatim.

Appellant first claims that a particular knife and a photograph of that knife were improperly admitted into evidence over his objection. He contends that because at trial the knife was neither positively identified nor definitely connected with the murder it should not have been admitted into evidence.

Appellant was indicted for two murders. An accomplice, Ernest Sewell, who had earlier pleaded guilty to a charge of second degree murder arising out of the same incident, testified at trial that on January 23,

---

[1] Appellant was also indicted on two counts of armed robbery for which he received two concurrent sentences of ten to twenty years.

1970, appellant had stabbed two persons in a local bar with a kitchen knife about 12 inches long. Sewell then testified that appellant returned to his home where he washed the knife in the bathroom and put it away in the kitchen.

On January 30, 1970, pursuant to a search warrant listing a kitchen knife as one of the items to be seized, the police found a 12-inch knife in appellant's kitchen. At trial the medical examiner testified that the two victims' fatal wounds were caused by a knife with a seven to seven and one-half inch blade. However, he was unable to positively state that the knife found in appellant's kitchen was the murder weapon. Moreover, the accomplice, Sewell, was unable to identify the knife at trial as the one used by appellant. Appellant contends that because the knife was not positively linked to the crime it should not have been admitted into evidence.

However, positive testimony that the knife in question was actually the murder weapon is not required prior to introduction into evidence. *United States v. Gordon,* 455 F. 2d 398 (8th Cir. 1972) ; *United States v. Cunningham,* 423 F. 2d 1269 (4th Cir. 1970) ; *United States v. Ramey,* 414 F. 2d 792 (5th Cir. 1969) ; *Pinkney v. United States,* 363 F. 2d 696 (D.C. Cir. 1966) ; *Commonwealth v. Ross,* 266 Pa. 580, 110 Atl. 327 (1920). If a proper foundation for admission of the evidence has been laid, as here, then admission into evidence is permissible. *United States v. Gordon,* supra at 401-02; *United States v. Cunningham,* supra at 1276; *Pinkney v. United States,* supra at 698. The fact that the knife could not be positively identified affects the weight of such evidence, but not its admissibility. *United States v. Gordon,* supra; *Commonwealth v. Ross,* supra at 585, 110 Atl. at 329.

In *United States v. Ramey,* supra at 794 (quoting *Banning v. United States,* 130 F. 2d 330, 335 (6th Cir.

1942) ), the Fifth Circuit appropriately noted: " 'Weapons, instruments and articles found in the possession of the accused at the time of his arrest, although not identified as those actually used, but similar thereto, or *which from the circumstance of the finding, justify an inference of the likelihood of their having been used,* are admissible to show that the accused had them for the purpose of overcoming his victim or to show a design or plan, the carrying out of which required their use.' " (Emphasis added.)

Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge, and absent an abuse of such discretion his decision must stand. See *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A. 2d 421 (1962) ; *Commonwealth v. Novak,* 395 Pa. 199, 150 A. 2d 102 (1959). A proper foundation for admission having been laid, we can find no abuse of discretion in admitting the knife and the photograph of the knife into evidence.

Appellant's second contention is that the trial judge abused his discretion by keeping the jury in deliberation for eight days, despite repeated reports of a deadlock, and by arbitrarily limiting the periods of time during those eight days when they were permitted to deliberate. Rather than arguing that the length of deliberation caused a coerced verdict of guilty, appellant is arguing that the trial judge coerced the jury's verdict by continually *withdrawing* from them their right to deliberate. We find this somewhat unique argument to be totally without merit. In *Commonwealth v. Campbell,* 445 Pa. 488, 495-96, 284 A. 2d 798, 801 (1971), this Court noted that "[t]he length of the deliberation of a jury is wisely left to the sound discretion of the trial judge, and we reverse only if we find a clear abuse of discretion, or that the verdict was the product of coercion or of an overworked and fatigued jury." Here the

trial judge, by reasonably limiting the time each day during which the jury was permitted to deliberate, was attempting to avoid just such an "overworked and fatigued jury." We cannot, and will not, disapprove of such judicial jury supervision. See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury §5.4 (Approved Draft, 1968).

Finally, appellant argues that the trial court abused its discretion by permitting the introduction into evidence over his objection of five allegedly prejudicial and inflammatory photographs. Two of the photographs showed the bodies of the victims lying on the floor of the bar where they were stabbed, while the remaining three photographs showed scenes of the bar. Appellant contends that these photographs were irrelevant in a felony murder case, and that any evidentiary value they might have had was outweighed by the "likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. Powell*, 428 Pa. 275, 279, 241 A. 2d 119, 121 (1968).

In *Powell* this Court did find an abuse of discretion when potentially inflammatory photographs were introduced in a felony murder case. We emphasized there that "we have a clear felony murder case where the force used and the nature and extent of the injuries involved have no bearing on a finding of first degree felony murder." *Powell*, supra at 279, 241 A. 2d at 121; see *Commonwealth v. Robinson*, 433 Pa. 88, 93, 249 A. 2d 536, 539 (1969) ; *Commonwealth v. Wilson*, 431 Pa. 21, 31, 244 A. 2d 734, 740 (1968). Indeed, if this were "a clear felony murder case," the Commonwealth would be hard pressed to find any justification for the admission of two closeup photographs of the murder victims showing stab wounds.

However, the Commonwealth's alternative theory of the case was nonfelony first degree murder. On this theory these photographs were admissible to show the use of a deadly weapon on a vital part of the body in order to infer an intent to kill. See, e.g., *Commonwealth v. Moore*, 398 Pa. 198, 202-03, 157 A. 2d 65, 68 (1959) and cases cited therein. Clearly though, the test of *Powell* is applicable to all homicide cases, and therefore we must determine whether the "essential evidentiary value" of these photographs in this first degree murder case "outweighs the likelihood of inflaming the minds and passions of the jurors." *Powell*, supra at 278-79, 241 A. 2d at 121. Applying this test here we find no abuse of discretion in admitting these photographs.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

I cannot agree with the majority's conclusion that the kitchen knife, a picture thereof, and the series of inflammatory photographs were properly admitted into evidence. Accordingly, I must dissent.

## I.

In justifying the introduction of the knife and the photograph depicting that knife, the majority refers to *United States v. Ramey*, 414 F. 2d 792 (5th Cir. 1969). There the court properly pointed out that weapons, although not identified as the actual weapon used, are properly authenticated when they are found in the possession of the accused at the time of his arrest, or in the alternative, where circumstances surrounding the finding justify an inference of the likelihood that the weapon was in fact the one used in the perpetration of the crime. In the case before us, I do not believe that

this test has been met. First, the knife was not found upon the person of the appellant and secondly, the testimony suggests not a similarity between the knife found and the knife used but rather clearly indicates that the knife introduced was not the weapon used to commit the crimes.

Had the testimony at trial been limited to a showing that after the commission of the alleged crimes the appellant was seen putting the knife away in his kitchen and that a subsequent search of the kitchen revealed a knife similar to the one described, I would agree that there was a sufficient basis for the introduction of the knife. Here, however, the very witness who observed the appellant putting away the knife unequivocally stated that this was not the weapon that he had referred to. The pertinent testimony of this witness, Ernest Sewell, is as follows: "BY MR. CZAP [Assistant District Attorney] : Q. Mr. Sewell, you said the knife was about 12 inches long? A. Yes. Q. And you said it had a handle? A. Yes, it did. BY THE COURT : Q. What color handle did it have? A. Brown. BY MR. CZAP : Q. *I show you what have [sic] been marked Commonwealth's exhibit 1; can you identify that?* A. *No, I have never seen it before.* MR. DARMOPRAY : What's the answer? MR. CZAP : Cannot identify it. BY MR. CZAP : Q. Do you see what it is? A. Yes, I see what it is. Q. What is it? A. It's a knife. Q. A kitchen knife? A. Yes. Q. *You can't say you saw that before?* A. *No.*" (Emphasis added.)

The majority however ignores this positive statement that the knife introduced was not the murder weapon and chooses to rely upon a number of cases which stand for the proposition that the lack of positive testimony to identify a particular weapon as the one used in the commission of a crime does not necessarily preclude its admissibility. With this basic principle I

agree. However, the cited cases are distinguishable from the instant situation since in those instances a lack of positive identification was found not to be controlling either because witnesses testified as to the similarity between the weapon admitted and the one used in the commission of the crime,[1] or the facts surrounding the discovery of the weapon were sufficient to support the inference that the defendant used it during the commission of the crime.[2]

In the instant case there was nothing unique involved in the discovery of the knife which would justify an inference of the likelihood that it was the murder weapon. Where else but a kitchen drawer would one expect to find a kitchen knife. Nor were there any independent witnesses who testified to the similarity between the murder weapon and the kitchen knife. To the contrary, the only positive testimony concerning the identification of the knife was made by the witness Sewell, who allegedly viewed the entire crime, including the cleansing of the murder weapon, and he clearly denied ever having seen this particular knife.

Under these facts, the knife should not have been admitted into evidence since, in my view, from the evi-

---

[1] *United States v. Cunningham*, 423 F. 2d 1269 (4th Cir. 1970) (several witnesses testified as to the similarity between the gun admitted and the one used) ; *United States v. Ramey*, 414 F. 2d 792 (5th Cir. 1969) (gun identified as being similar to one used during the robbery) ; *Pinkney v. United States*, 363 F. 2d 696 (D.C. Cir. 1966) (eyewitness identified knife as being similar to the murder weapon). *See United States v. Gordon*, 455 F. 2d 398 (8th Cir. 1972), *cert. denied*, 406 U.S. 970 (1972) (conflict in testimony of two witnesses as to identification of two guns found not to be significant; there was at least some testimony as to similarity and one of the participants positively identified one of the two weapons).

[2] *United States v. Ramey, supra; Pinkney v. United States, supra* (knife found in patrol wagon after defendant had been a passenger) ; *Commonwealth v. Ross*, 266 Pa. 580, 110 Atl. 327 (1920) (defendant admitted stabbing the victim and knife found in an open cellar in alley where defendant admittedly threw it).

dence presented the jury was precluded from inferring that the exhibit was in fact the murder weapon.

## II.

I am also in disagreement with the majority's determination that the admission of the prejudicial and inflammatory photographs was not an abuse of discretion. In *Commonwealth v. Powell*, 428 Pa. 275, 278-79, 241 A. 2d 119, 121 (1968), this Court stated: "We are of the opinion that the proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." Applying this test to the case before us, I am forced to conclude that the pictures, particularly the two depicting the bodies of the deceased, were completely unnecessary and the prejudicial effect far outweighed any possible probative value.

The majority attempts to justify the admission of this evidence on the basis that the Commonwealth's alternative theory was that of a premeditated, non-felony, first-degree murder. They argue that it was necessary for the Commonwealth to establish the use of a deadly weapon on a vital portion of the body and that the pictures served this purpose. The record, however, reveals that the Commonwealth had also introduced the testimony of Dr. Catherman, the pathologist who performed the autopsy; Sharon Kerzner, a laboratory technician; Officer Ashmore, the first officer to arrive at the scene; and Ernest Sewell, the co-defendant. Each of these witnesses testified as to the nature of the injuries and the condition of the bodies. The pictures, at best, were cumulative as to this issue. In addition, there was no serious contradiction by the defense either

as to the nature of the wounds or the cause of death. While I agree that there may be instances where pictures should be permitted to aid in establishing a specific intent to kill, this case was not one where there was a need to risk the possible prejudice inherent in the exhibit.

This Court observed in *Commonwealth v. Peyton*, 360 Pa. 441, 62 A. 2d 37 (1948), that although the admission of photographs in a homicide case to show the body of the deceased is largely within the discretion of the trial judge, a flagrant abuse of that discretion will not be permitted. "The practice of admitting such exhibits unless they have essential evidentiary value is condemned. When the facts that these exhibits would tend to prove can be proved by testimony without the use of photographs which tend to excite the emotions of those who view them, such testimony should be used exclusively and photographs should not be admitted." 360 Pa. at 450, 62 A. 2d at 41.

In the instant case, no one questions the fact that the pictures, particularly those depicting the bodies of the deceased were in fact inflammatory. Therefore, in view of the limited purpose they served in establishing an element of the Commonwealth's case, I am forced to conclude that the trial court abused its discretion in allowing their admission.

I would reverse the judgment of sentence and order a new trial for the reasons stated above.