J-S14011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GORDY TATE | : | |
| | : | |
| Appellant | : | No. 1535 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0003572-2022

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 17, 2025**

Appellant Gordy Tate appeals from the judgment of sentence entered on February 12, 2024, in the Court of Common Pleas of Chester County following his convictions for, *inter alia*, Homicide by Vehicle, Receiving Stolen Property ("RSP"), Reckless Driving,[1] and numerous traffic offenses.  Appellant challenges the denial of his pretrial motion to suppress and motion in *limine*, an evidentiary ruling, the sufficiency of the evidence supporting his RSP conviction, and the legality of his sentence.  After careful review, we vacate Appellant's sentence for Reckless Driving, and otherwise affirm.

**A.**

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3732; 18 Pa.C.S. § 3925(a); and 75 Pa.C.S. § 3736(a), respectively.

We glean the relevant factual and procedural history from the trial court opinion. On October 1, 2022, Officer James Ensor of the West Chester Boro Police Department was on patrol in a marked car when he received a radio dispatch regarding a stolen vehicle, a white Chevrolet Malibu. Officer Ensor observed the vehicle, driven by Appellant with a passenger in the front seat, and attempted to initiate a traffic stop. Appellant did not stop, and instead drove quickly away, committing multiple traffic violations while fleeing. It was dusk and raining, and Appellant was traveling faster than Officer Ensor, who was traveling at 80 miles per hour.

After pursuing Appellant for several miles, Officer Ensor came upon the vehicle, which had crashed. "There was severe front-end damage, fire in the engine compartment, and the passenger side of the vehicle was completely smashed." Trial Ct. Op., 9/4/24, at 4 (record citation omitted). Officer Ensor and Officer Micaela Hill,[2] who was in a separate patrol vehicle behind Officer Ensor, approached the crashed vehicle and ordered the occupants to exit. They were unable to exit, so the officers first attempted to help the passenger, who was unconscious, out of the vehicle before helping Appellant. The passenger, Marquin Thorn ("Decedent"), did not survive the crash.

Once the officers removed Appellant from the vehicle, they placed him in handcuffs, and asked him various questions, including his name, the

_____

[2] Officer Hill is also referred to throughout the record as Officer Winter, as she changed her last name from Winter to Hill between the date of the incident and Appellant's trial.

- 2 -

passenger's name, and whether he had any weapons. The officers' body-worn cameras ("BWC") captured their interaction. Relevantly, Officer Hill asked Appellant where he was coming from and Appellant responded that he had been making a delivery. *Id.* at 5. Officer Hill accompanied Appellant in the ambulance and at the hospital, and, thus, her BWC recorded conversations between Appellant and various medical professionals. At no point did the officers give Appellant his *Miranda*[3] warnings.

The Commonwealth charged Appellant with the above crimes on October 2, 2022. Appellant filed an omnibus pretrial motion seeking, relevantly, to preclude reference to the fact that Appellant had a bench warrant for service[4] at the time of the incident, and to suppress statements made to the police officers while he was detained prior to the arrival of the ambulance. Omnibus Pretrial Motion, 11/19/23, at ¶¶ 42-42; 101-115. Following hearings, the court denied both of Appellant's motions. Regarding the outstanding bench warrant, the court permitted the Commonwealth to present testimony "that there may have been a warrant for [Appellant] in a criminal case at the time of the incident[,]" but precluded evidence regarding the specific charges or their grading. Order, 11/21/23.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] According to Appellant, the bench warrant was for service only—if stopped by police, the police would serve Appellant for his next court date, not arrest him. *See* Appellant's Br. at 10.

- 3 -

On November 28, 2023, Appellant proceeded to trial. Several witnesses testified for the Commonwealth, including Officers Ensor and Hill, who testified consistently with the above facts, and Christopher Heller, the owner of the vehicle. Officer Ensor identified Appellant as the driver, and Officer Hill testified that she saw Officer Ensor and another officer removing Appellant from the driver's seat. N.T. Trial, 11/28/23 at 49, 81, 94; 106, 112. Relevantly, Officer Ensor also testified that after receiving the report of a stolen car and seeing the car that Appellant was driving, he observed that both visors in the car were down.

Further, the Commonwealth asked Officer Ensor if he was able to determine whether Appellant had any active warrants at the time of the pursuit, and Officer Ensor responded, "I was." N.T. Trial, 11/28/23, at 78. When asked what he learned, Officer Ensor responded that Appellant "had an active warrant out of Philadelphia." *Id.*

During cross-examination, Appellant's counsel asked Officer Ensor whether he was aware that the outstanding bench warrant was a service warrant. Officer Ensor responded that he only knows that it was listed on the National Crime Information Center ("NCIC") site, and later explained that NCIC does not differentiate between different types of warrants. *Id.* at 90.[5]

---

[5] Officer Ensor did not use the phrase "service warrant" during his direct testimony, but Appellant's counsel used the phrase during cross-examination. The Court pointed this out after the jury asked during deliberations for the definition of a "service warrant." N.T. Trial, 11/30/23, 500-01.

During Officer Hill's cross-examination, Appellant's counsel attempted to introduce Decedent's Instacart records to show that Appellant and Decedent were making deliveries at the time of the accident. The Commonwealth objected, challenging both the authentication of the records and the introduction of the records through Officer Hill. At side bar, Court first determined that the records were self-authenticating pursuant to the Pennsylvania Rules of Evidence 902(11) and 803(6). The Commonwealth then argued that the times listed did not match the time of the accident. Appellant's counsel explained that "PT" on the records indicated that the times were in Pacific Time, as Instacart is based in California; however, the records did not specify that PT meant Pacific Time.

Addressing the Commonwealth's challenge to presenting the Instacart records through Officer Hill, the court sustained the objection, observing that asking Officer Hill about the times and other data listed on the records would require her to speculate. The court also noted that Appellant's counsel had not established the Decedent's birth date, which would connect the records to him.[6] Ultimately, the court would not permit Appellant's counsel to introduce the records through Officer Hill, but would permit Appellant's counsel to introduce them later if he could lay a foundation. N.T. Trial, 11/28/23, at 128-137. Appellant's counsel did not introduce the Instacart records.

_____

[6] The court refused to take judicial notice of Decedent's birth date because he was not a defendant and precluded Appellant from introducing Decedent's criminal record to establish his birth date.

Mr. Heller testified that his keys and the vehicle had been stolen from his apartment in Philadelphia on September 1, 2022. He testified that the vehicle was registered to his mother, the E-Z Pass inside was registered to his father, and the vehicle had New Jersey license plates. He further testified that his father's credit card was in a compartment near the steering wheel, his mother's credit card was in the vehicle, the registration with his mother's name was in the glove box, his work identification card with his full name and picture was in the center console, and a picture of his girlfriend was on the visor.

Appellant also testified. Relevantly, he stated that he had taken public transportation to Decedent's house in Southwest Philadelphia earlier that day and explained that Decedent had the vehicle and its keys. He further testified that they were making Instacart deliveries for Decedent's Instacart account at the time of the accident, and he stated multiple times that Decedent was driving. On cross-examination, Appellant admitted that he did not have a license and that he had an active warrant. He also stated that he did not know if Decedent had a girlfriend and did not see any pictures on the visor.

The jury convicted Appellant of the above charges, and the court convicted him of the summary traffic offenses. On February 12, 2024, the court sentenced Appellant to an aggregate term of 2½ to 5 years of incarceration, followed by 3 years of probation. The court also imposed fines for the traffic violations, including $25 each for Driving on Roadways Laned for Traffic and Driving Vehicle at Safe Speed and $200 for Reckless Driving,

plus costs. Appellant filed a post-sentence motion, which the court denied on May 1, 2024.

**B.**

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following claims for our review:

1. Did the trial court err when it denied Appellant's motion to suppress his statement to Officer [Hill], who questioned Appellant regarding where he was coming from while Appellant was in custody without first administering ***Miranda*** warnings?

2. Did the trial court abuse its discretion by precluding Appellant from cross-examining Officer [Hill] regarding [Decedent's] Instacart records, which were admissible and properly authenticated under Rules 902(11) and 803(6) of the Pennsylvania Rules of Evidence?

3. Did the trial court abuse its discretion by denying Appellant's motion to preclude the Commonwealth from offering evidence regarding his warrant, which was for service only, as evidence of motive under Pennsylvania Rule of Evidence 404(b)? Did the trial court further abuse its discretion by concluding that the probative value of this evidence outweighed the danger of unfair prejudice under Pennsylvania Rule of Evidence 403?

4. Was the evidence insufficient to support Appellant's conviction for [R]eceiving [S]tolen [P]roperty, 18 Pa.C.S.[] § 3925(a), because the Commonwealth failed to prove beyond a reasonable doubt that Appellant knew that the vehicle was stolen or believed that the vehicle had probably been stolen?

5. Are Appellant's sentences for [D]riving on [R]oadways [L]aned for [T]raffic (Count 6) and [D]riving Vehicle at Safe Speed (count 7) illegal because they should have merged with his sentence for Homicide by Vehicle (count 1), as they were the underlying traffic violations?

Appellant's Br. at 5-6.[7]

## C.

Appellant first argues that the court erred in denying his motion to suppress the statement he made to Officer Hill before Officer Hill gave him his **Miranda** warnings. In particular, Appellant argues Officer Hill was interrogating him while he was waiting for the ambulance and in handcuffs— she asked him where he was coming from, and he responded that he had been making deliveries. **Id.** at 5.

We review the denial of a suppression motion to determine "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017). While we are bound by the suppression court's factual findings that are supported by the record, we are not bound by its legal conclusions, which we review *de novo*. **Id**. Our scope of review is limited to the record before the suppression court, and, when the Commonwealth has prevailed below, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." **Id.**

It is well-settled that when a defendant is subject to a custodial interrogation, the Fifth Amendment requires that law enforcement officers provide him with **Miranda** warnings. U.S. CONST. amend. V; **Miranda**, 384

---

[7] We have renumbered claims 2 and 3 to reflect the order in which they appear in the body of Appellant's brief. We also note that Appellant raised two additional issues in his Pa.R.A.P. 1925(b) Statement that he has not addressed in his brief. We find these issues waived.

U.S. at 444. *See also Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006) (applying *Miranda*). When a suppression court determines whether the police had subjected a defendant to an interrogation,[8] the suppression court applies the following standard:

> [the standard] is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. **Interrogation is police conduct calculated to, expected to, or likely to evoke admission**.

*Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (internal citations and quotation marks omitted; emphasis added).

We emphasize that this determination "does not depend upon the subjective intent of the law enforcement officer interrogator." *Commonwealth v. Gonzalez*, 979 A.2d 879, 888 (Pa. Super. 2009) (citation omitted). Rather, to determine if a law enforcement officer should have known that questioning was calculated to "produce an incriminating response[,]" we consider the totality of the circumstances surrounding the interaction with a focus on the suspect's perception and the police officer's knowledge. *Commonwealth v. Briggs*, 12 A.3d 291, 323 (Pa. 2011).

\*

---

[8] The court determined, and we agree, that Appellant was in custody at the time when police placed him in handcuffs after removing him from the vehicle. Trial Ct. Op. at 7.

Appellant moved to suppress his response—that he was making deliveries—to Officer Hill's question about where he was coming from before the accident. Appellant argues that this question was likely to elicit an incriminating response, even if unintentionally. Appellant's Br. at 26. Appellant maintains that Officer Hill's question was not related to basic or biographical information or medical treatment. *Id.* Rather, he asserts that the purpose of this question was to obtain inculpatory information as to whether he had been fleeing from them in a stolen vehicle. *Id.*

The court determined, however, that, even though Appellant was in custody, there was no violation of his constitutional rights because the officers did not ask him any questions with the intent to elicit incriminating responses. Trial Ct. Op. at 7-8. Specifically, the court noted that, in addition to the questions asked by EMTs for purposes of medical treatment, the questions police asked Appellant were "biographical questions, basic informational questions[,] and questions regarding medical treatment[,]" and "questions relating to public safety and not intending to elicit incriminating responses" which do not require *Miranda* warnings. *Id.* at 8.

We conclude that the court did not err in denying suppression because Officer Hill's question did not objectively attempt to elicit an inculpatory statement and thus, constitute an interrogation. Appellant's argument is conclusory and fails to articulate how the answer to the question would have incriminated him. The vehicle had been stolen a month before the accident, and the officer merely asked what Appellant was doing before the accident.

- 10 -

Objectively analyzing the question, it did not request incriminating information. Rather, it sought to obtain information that might explain the cause of the accident. Appellant's argument that the police asked the question to elicit Appellant's response that he was driving a stolen car is not an objective interpretation of the question, but purely speculation of an improbable answer. Accordingly, this claim lacks merit.

**D.**

Appellant next asserts that the court abused its discretion by precluding Appellant from cross-examining Officer Hill regarding Decedent's Instacart records. *See* Appellant's Br. at 5. We review evidentiary rulings for an abuse of discretion. ***Commonwealth v. Thompson***, 106 A.3d 742, 754 (Pa. Super. 2014). An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted).

It is entirely within the court's discretion to determine the scope and limits of cross-examination. ***Commonwealth v. Birch***, 616 A.2d 977, 978 (Pa. 1992). When a party seeks to present a document through cross-examination, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Examples of such evidence include "Testimony of a Witness with Knowledge . . . that an item is what it is claimed to be." ***Id***. at 901(b)(1).

- 11 -

It is axiomatic that a party must lay a foundation for evidence to be admissible. *Commonwealth v. Ford*, 301 A.2d 856, 857 (Pa. 1973); *see also Commonwealth v. Sinwell*, 457 A.2d 957, 959 (Pa. Super. 1983) (photographs were admissible because Commonwealth witnesses' testimony that they were fair and accurate depiction of crime scene was sufficient to establish foundation). If a party does not establish a connection between the offered evidence and "the parties or events which are the subject of the litigation," a court may exclude the evidence. *Commonwealth v. Pollock*, 606 A.2d 500, 506 (Pa. Super. 1992). Evidence initially determined to be inadmissible "may later be admitted when additional foundation is laid, [or] when additional facts are adduced which establish relevancy[.]" *Commonwealth v. Jorden*, 482 A.2d 573, 580 (Pa. Super. 1984).

\*

Appellant asserts that the court abused its discretion when it prohibited him from cross-examining Officer Hill based on Decedent's Instacart records. Appellant's Br. at 27. He argues that he "has a fundamental right to present evidence if it is relevant and not excluded by an evidentiary rule[,]" and the court prevented him from putting forth a complete defense by excluding this evidence. *Id.* at 28 (citing *Commonwealth v. Britton*, 380 A.2d 807 (Pa. 1976)). Finally, Appellant notes that he had provided the records to the Commonwealth prior to trial as required by Rule 902(11), the Commonwealth had the opportunity to raise any concerns pretrial, and the Commonwealth's

failure to share the records with Officer Hill does not preclude him from asking her about them. *Id.* at 30.

The court explained that its ruling was "proper based on the circumstances[.]" Trial Ct. Op. at 23. Acknowledging its finding that the records were self-authenticating, the court nonetheless found that it was not proper to present these records to the jury through cross-examination of Officer Hill because Appellant had failed to lay a proper foundation. *Id.* at 23. The court observed that Officer Hill "did not work for Instacart and only vaguely knew about Instacart[,]" and that there were several columns of data for which Officer Hill would need to speculate to interpret them, including whether "PT" meant "Pacific Time." *Id.* at 19-21, 23. The court also observed that Appellant had not established Decedent's birth date, which would have established that the records belonged to Decedent's Instacart account. *Id*. at 22-23. The court explained that it did not prevent Appellant from introducing Decedent's Instacart records through another witness, and observed that Appellant chose not to do so. *Id.* at 23.

Following our review, we conclude that the trial court did not abuse its discretion in prohibiting Appellant from presenting the Instacart records though his cross-examination of Officer Hill. The records are self-authenticating documents, but Appellant fails to address the court's determination that he did not lay a proper foundation, either to establish their relevance by connecting them to Decedent or to introduce them through Officer Hill. Trial Ct. Op. at 22-23. Instead, he blames the Commonwealth

for his failure to lay a foundation by claiming that it did not show the records to Officer Hill prior to trial. Appellant's Br. at 30. Appellant's arguments fail to persuade this Court that the trial court abused its discretion. Moreover, the trial court did not prevent Appellant from introducing the records, only from introducing them through cross-examination of Officer Hill. Thus, Appellant's claim that the court's ruling prevented him from putting forth a complete defense is meritless.[9] Accordingly, this claim lacks fails to garner relief.

**E.**

Appellant next claims that the trial court abused its discretion by denying his motion to preclude reference to his then-outstanding service-only warrant as evidence of his motive to flee under Pa.R.E. 404(b) because its prejudicial value outweighed its probative value. Appellant's Br. at 31, 34.

In reviewing the disposition of a motion in *limine*, "we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Cook*, 231 A.3d 913, 919 (Pa. Super. 2020) (citation omitted).

It is axiomatic that "[o]nly relevant evidence is admissible at trial." *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) (citing Pa.R.E. 402). Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. Pa.R.E. 401. However, even relevant evidence may be excluded "if its probative value is outweighed by ... unfair prejudice, confusing the issues, misleading the jury, undue delay,

_____

[9] In fact, the trial court informed Appellant that he could introduce the records through an appropriate witness.

wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.* at cmt. (internal quotation omitted).

Pa.R.E. 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2); *see also Commonwealth v. Dillon*, 925 A.2d 131, 137 (Pa. 2007) (applying Rule 404(b)(2)).

\*

Appellant argues that the court erroneously concluded that the risk of unfair prejudice did not outweigh the probative value of testimony about his warrant. Appellant's Br. at 31-34. Specifically, he asserts that a service-only warrant is "not relevant to establish motive since there was no evidence that [he] was aware of the warrant, as he had not yet been served[,]" and thus, the probative value of the warrant is low. *Id.* at 31, 34. Relatedly, Appellant asserts that *Commonwealth v. Correa*, 620 A.2d 497 (Pa. Super. 1992), cited by the Commonwealth at the motions hearing, is distinguishable because Appellant did not know he had an outstanding warrant and, thus, the warrant

did not provide a motive to flee from the police. *Id.* at 32-33.[10] He also maintains that the danger of unfair prejudice was high because the existence of the warrant informed the jury that he had another criminal case pending. *Id.* at 33-34. Finally, Appellant asserts that "confusion regarding the warrant likely affected the verdict" because the jury had asked for the definition of a service warrant and the court could not provide it. *Id.* at 35-46.

The trial court explained that evidence of the warrant "was not offered to smear his character or to prove his criminal propensity"—"[r]ather, the evidence tended to establish that [Appellant] had a reason to avoid the police, and provided a possible motive for fleeing when police tried to stop the vehicle." Trial Ct. Op. at 17. Further, the court opined that "the prejudicial effect of this evidence was reduced by not allowing testimony regarding the underlying charges [or] the grading of the [underlying] charges." *Id.* at 18. The court also noted that Appellant testified that he knew that he had an open warrant at the time of the incident. *Id.* (citing N.T. Trial, 11/30/23, at 409).

_____

[10] In **Commonwealth v. Correa**, the court allowed the Commonwealth to impeach a witness's credibility with reference to his prior arrest and conviction for a non-*crimen falsi* offense to establish, *inter alia*, that at the time of the offense at issue, the witness had an outstanding warrant for his arrest and, thus, reason to avoid the police so it was unlikely that he had "watched appellant's arrest from a close distance for approximately ten minutes" as he had claimed. 620 A.2d 497, 503–04 (Pa. Super. 1993). Appellant is, thus, correct that **Correa** is distinguishable but not because Appellant was not aware of the warrant, a claim that is, in any event, belied by the record. **See** N.T. Trial, 11/30/23, at 409 (Appellant testifying that he was aware of the warrant).

Following our review, we discern no abuse of discretion in the trial court's determination that the danger of unfair prejudice did not outweigh the probative value of the testimony regarding Appellant's warrant. The probative value of the testimony was high because it established a possible motive for Appellant to flee from the police. As noted above, Appellant's own testimony that he knew of the warrant belies his assertion that he was unaware of it. N.T. Trial, 11/30/23, at 409. Furthermore, the court mitigated the danger of unfair prejudice by limiting discussion of the warrant to testimony about its existence and did not permit testimony about the underlying charges or their grading. Order, 11/21/23. Accordingly, this claim merits no relief.

**F.**

Appellant next challenges the sufficiency of the evidence supporting his conviction for RSP. Appellant's Br. at 36-38. We review challenges to the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014). The jury—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id.* at 40. Moreover, the jury may base a conviction solely on circumstantial evidence. *Id.* In conducting this review, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Id.*

A defendant commits RSP if:

> he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a). The definition of "receiving" includes, acquiring possession or control of the property. *Id.* at (b). To obtain a conviction for RSP, the Commonwealth must prove beyond a reasonable doubt that, *inter alia*, "the defendant knew the property was stolen or had reason to believe the property was stolen." ***Commonwealth v. Matthews***, 632 A.2d 570, 572 (Pa. Super. 1993). "However, the mere possession of stolen property is insufficient to permit an inference of guilty knowledge; there must be additional evidence, circumstantial or direct, which would indicate that the defendant knew or had reason to know that the property was stolen." ***Id.*** at 572 (discussing, generally, physical signs of theft, lack of keys, defendant's behavior, time elapsed since theft, and explanation for possession of a stolen vehicle as evidence supporting the *mens rea* for RSP).

*

Appellant argues that the evidence was insufficient to support his conviction for RSP because the Commonwealth failed to prove that he either knew the vehicle had been stolen or believed it had probably been stolen. Appellant's Br. at 36. In support, he notes that the vehicle was stolen from Philadelphia a month earlier, and "unrebutted testimony" established that the vehicle was parked near Decedent's house in Southwest Philadelphia and Decedent had the keys, so Appellant concluded that it belonged to Decedent.

*Id.* at 37-38 (citing N.T. Trial, 11/30/23, at 390-91). Appellant compares this case to several others in which the evidence was insufficient for RSP. Appellant's Br. at 36-37 (citing **Commonwealth v. Stover**, 436 A.2d 232 (Pa. Super. 1981) (holding evidence was insufficient to establish that defendant knew vehicle was stolen where it was stolen weeks earlier and he referred to it as his); **Commonwealth v. Henderson**, 304 A.2d 154 (Pa. 1973) (same, where vehicle was stolen weeks earlier, defendant willingly pulled over, and explained that he had borrowed vehicle); and **Commonwealth v. Grant**, 341 A.2d 511 (Pa. Super. 1975) (same, where vehicle was stolen weeks earlier, defendant did not have paperwork, and claimed he borrowed vehicle from a friend). Appellant concedes that there "may have been" some of the Heller family's personal property in the vehicle, but maintains that was not sufficient to establish that he should have known that it was stolen. *Id.* at 38.

Following our review, we conclude that the Commonwealth presented sufficient evidence to establish that Appellant either knew the vehicle was stolen or had reason to believe that it was. The evidence, when viewed in the light most favorable to the Commonwealth as the verdict winner, demonstrated that Appellant was driving the vehicle, and the vehicle had several items bearing the names and/or photograph of Mr. Heller or his parents near the driver's seat along with a photograph of Mr. Heller's girlfriend on the visor, which Officer Ensor saw was down. N.T. Trial, 11/28/23, at 35-39, 84. Furthermore, the vehicle had New Jersey license plates, indicating

that it likely did not belong to Decedent, who lived in Philadelphia. The cases Appellant cites are distinguishable because here, there was circumstantial evidence inside the vehicle indicating that it did not belong to Decedent, and because Appellant fled from police. It was within the jury's purview to assign weight to Appellant's testimony that he did not see any items belonging to the Heller family, and that he believed the vehicle belonged to Decedent. This Court may not re-weigh this testimony as he wishes. Accordingly, this claim merits no relief.

## G.

Finally, Appellant claims that his sentences for Driving on Roadways Laned for Traffic, Driving Vehicle at Safe Speed, and Reckless Driving[11] are illegal because they should have merged with his sentence for Homicide by Vehicle. Appellant's Br. at 38-41, Appellant's Reply Br. at 7-10. "A claim that convictions merge for sentencing is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Kimmel***, 125 A.3d 1272, 1275 (Pa. Super. 2015) (*en banc*).

Section 9765 of the Sentencing Code governs merger, and provides that

---

[11] Appellant raises this claim regarding Reckless Driving for the first time in his reply brief, after the trial court and Commonwealth conceded that Reckless Driving merges with Homicide by Vehicle for sentencing. Trial Ct. Op. at 46, Commonwealth's Br. at 44-45. Nevertheless, challenges to the legality of sentence, including those involving merger, "can never be waived" and this Court may raise them *sua sponte*. ***Commonwealth v. Tanner***, 61 A.3d 1043, 1046 (Pa. Super. 2013); ***Commonwealth v. Watley***, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*). Accordingly, we address the legality of sentence claim as it pertains to all three convictions.

[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." **Commonwealth v. Raven**, 97 A.3d 1244, 1249 (Pa. Super. 2014) (citation omitted).

The elements for Homicide by Vehicle are that "(1) the Appellant drove in a manner that violated the Motor Vehicle Code, (2) the Appellant knew or should have known that his conduct violated the law[,] and (3) the death was the probable result of the Motor Vehicle Code violation." **Matter of Huff**, 582 A.2d 1093, 1097 (Pa. Super. 1990). A defendant is guilty of Reckless Driving if he "drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S. § 3736(a). We have determined that, in the context of lesser-included offenses for double jeopardy purposes, Reckless Driving is a lesser included offense of Homicide by Vehicle.[12] **Huff**, 582 A.2d at 1097.

_____

[12] Determining whether an offense is a lesser included offense for purposes of double jeopardy requires the court to determine "whether each and every element of the lesser offense is necessarily an element of the greater offense." **Huff**, 582 A.2d at 1096. Therefore, this analysis is analogous to the analysis for merger, which requires us to determine, *inter alia*, whether "all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765.

- 21 -

Section 3361 of the Vehicle Code, Driving at Safe Speed, mandates that, *inter* alia,

> [n]o person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead.

75 Pa.C.S. § 3361. "Since evidence of a speed violation is not always necessary to prove a charge of [H]omicide by [V]ehicle, [Section] 3361 is not a lesser included offense" of Homicide by Vehicle. **Huff**, 582 A.2d at 1097. Finally, Section 3309(1) of the Vehicle Code, Driving on Roadways Laned for Traffic, provides that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic the following rules [] shall apply: (1) [ ] A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S. § 3309(1).

*

Appellant argues that a violation of a Pennsylvania law relating to the operation or use of a motor vehicle is an element of Homicide by Vehicle. Appellant's Br. at 40. He notes that Driving on Roadways Laned for Traffic and Driving Vehicle at Safe Speed are the traffic violations put forth by the Commonwealth as the causes of the accident and the basis for the Homicide by Vehicle charge and, thus, they are an element of Homicide by Vehicle and should merge for sentencing. *Id.* (citing N.T. 11/30/23). He analogizes this case to the merger of a Driving under the Influence ("DUI") sentence with a

Homicide by Vehicle while DUI sentence because DUI is an element of Homicide by Vehicle while DUI. *Id.* at 39. In his reply brief, Appellant also asserts that his sentence for Reckless Driving should merge with his sentence for Homicide by Vehicle based on the analysis in *Huff*, *supra*. *See* Appellant's Reply Br. at 7-10.

Following our review, we conclude that the offense of Reckless Driving merges with Homicide by Vehicle for purposes of sentencing, while the other two traffic violations do not. First, all of the applicable charges resulted from a single criminal episode. As our court explained in *Huff*, all elements of Reckless Driving are included in Homicide by Vehicle, but all elements of Driving at Safe Speed are not. 582 A.2d at 1097. Accordingly, the parties and the court are correct that Reckless Driving merges, and, thus, we vacate that sentence. We affirm Appellant's sentence for Driving at Safe Speed, as it does not merge with Homicide by Vehicle. Finally, we conclude that Driving on Roadways Laned for Traffic includes an element that Homicide by Vehicle does not—the failure to drive within a single lane. Accordingly, we affirm Appellant's sentences regarding those charges as well.

**H**.

In sum, we conclude that all of Appellant's claims, except his legality of sentence challenge to his sentence for Reckless Driving, lack merit.

Accordingly, we vacate his sentence—a fine of $200 plus costs—and affirm the remainder of his judgment of sentence.[13]

Judgment of sentence vacated in part and affirmed in part.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/17/2025

---

[13] Because our decision does not alter Appellant's overall sentencing scheme, there is no need for this Court to remand for a new sentence. **Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006).